IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| RICHARD STEVENSON,<br><br>Plaintiff,<br><br>v.<br><br>STATE OF HAWAII, DEPARTMENT OF PUBLIC SAFETY, ET AL.,<br><br>Defendants. | CIV. NO. 23-00115 JMS-WRP<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT, ECF NOS. 93 & 94 |

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT, ECF NOS. 93 & 94

## I. INTRODUCTION

This order rules on two Motions for Summary Judgment in this action brought by Plaintiff Richard Stevenson ("Plaintiff" or "Stevenson") alleging violations of (1) Title VII discrimination and retaliation provisions, (2) 42 U.S.C. §§ 1983 & 1985, and (3) related supplemental claims under Hawaii law. First, Defendants State of Hawaii, Department of Public Safety ("DPS"); and Defendants Albert Cummings, Bryan Marciel, Derek Ozaki, Keola Kekaulike, Reid Ogata, and Raymond Calucag (all in their official capacities as employees of the DPS) move

for summary judgment on all claims asserted against them.[1]  *See* ECF No. 93.  And

second, Defendants Cummings, Marcial, Ozaki, Kekaulike, Ogata and Calucag (all

in their personal capacities) move for summary judgment on all claims asserted

against them individually.  *See* ECF No. 94.  Based on the following, the Motions

are GRANTED in PART and DENIED in PART.

## II.  **BACKGROUND**

**A.     General Factual Background**

Plaintiff is a deputy sheriff employed by the DPS since about 2006.

ECF 100-2 at PageID.992.  He is of Samoan ancestry.  *Id.*  His first amended

complaint ("FAC") asserts seven claims for relief centering around a "Restriction

of Police Authority" or "ROPA" he received in early September of 2020 that lasted

approximately eight months.[2]  *Id.* at PageID.993.  After the ROPA was issued,

Plaintiff was reassigned from the Airports Division to a Kapolei courthouse, with

---

[1]  Although the first Motion was brought only by the DPS (which is now known as the
Hawaii Department of Law Enforcement, *see* ECF No. 93-20 at PageID.764), the arguments
apply equally to claims against the individual Defendants in their official capacities (especially
where, as here, there are no claims specifically seeking prospective injunctive relief under *Ex
parte Young*, 209 U.S. 123 (1908)).  *See, e.g.*, *Branstetter v. Lorenzo*, 2021 WL 5568155, at *4
(D. Haw. Nov. 29, 2021) (reiterating that "suits against state officials in their official capacities
are no different than suits against the State itself") (citing *Kentucky v. Graham*, 473 U.S. 159,
165–67 (1985)).  The court thus construes the first Motion as being brought by both the DPS and
Defendants Cummings, Marciel, Ozaki, Kekaulike, Ogata, and Calucag in their official
capacities.  "DPS" essentially includes the entity as well as all Defendants in their official
capacities as employees of the DPS.

[2]  A ROPA apparently includes a loss of use of a weapon, ammunition, badge, and
credentials.  *See, e.g.*, ECF No. 100-7 at PageID.1009.

(according to Plaintiff) a resulting loss in income due to reduced overtime and loss of holiday and special duty pay. *Id.*; *see generally* ECF No. 11 at PageID.60–61. Although the precise reasons for the ROPA are disputed, the dispute centers around an August 27, 2020 incident during a meeting at the Honolulu International Airport where Plaintiff was accused of threatening another employee, after which Defendants Ogata and Cummings (supported by complaints from the other Defendants) recommended issuing Plaintiff a ROPA. ECF No. 100-7 at PageID.1008–1009. A week prior, on or about August 21, 2020, Plaintiff had complained to Hawaii State senators and others regarding a lack of compliance by DPS workers with COVID-19 safety restrictions then in place at Honolulu International Airport. *See* ECF No. 100-2 at PageID.992; ECF No. 11 at PageID.59–60 (allegations). Among other alleged incidents, Plaintiff claims that the ROPA and reassignment constituted racial discrimination and unlawful retaliation in violation of Title VII.

The FAC alleges a variety (and pattern) of other incidents besides the August 21, 2020 complaint that Plaintiff made, some of which allegedly occurred as far back as 2009—and there is some limited evidence supporting such allegations in the summary judgment record. *See, e.g.*, ECF No. 11 at PageID.54–59; ECF No. 100-2 at PageID.992. Similarly, there are allegations and limited evidence of retaliatory incidents against Plaintiff occurring both before and after

September 2020, including a permanent reassignment in July of 2021 and non-selection for a position later in 2021. *See, e.g.*, ECF No. 11 at PageID.61–66; ECF No. 100-13 at PageID.1040. Plaintiff asserts that some of these alleged incidents also constituted "protected activity" or "adverse employment actions." ECF No. 100 at PageID.957.

The court's review of the record and analysis of the Motions, however, was hampered by documented violations by Plaintiff's counsel of the Civil Local Rules of Practice for the District of Hawaii, which violations (as explained to follow) led the court to strike portions of Plaintiff's arguments in his Oppositions and assertions in his Concise Statements of Fact. *See, e.g.*, ECF Nos. 104–105, 107–108.[3] Further, in several instances, Plaintiff's counsel did not support his arguments with evidence in the record, but rather improperly relied simply on allegations in the FAC. *See Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003) (explaining that if a movant at summary judgment carries its initial burden, a plaintiff "must produce evidence in response. . . he cannot defeat summary judgment with allegations in the complaint, or with

---

[3] In many areas, Defendants' Motions were lacking in substance as well. In making its rulings here, the court applies the "principle of party presentation"—"the rule that points not argued will not be considered." *Margolin v. Nat'l Assn. of Immig. Judges*, 146 S. Ct. 1285, 1288 (2026) (citation and quotation marks omitted). That is, unless necessary, the court does not raise grounds for possible relief not raised by Defendants (nor, for that matter, omissions by Plaintiff in opposition).

unsupported conjecture or conclusory statements"); *Bras v. Cal. Pub. Utilities*

*Comm'n*, 59 F.3d 869, 872 (9th Cir. 1995) (reiterating that to defeat a properly-

supported motion for summary judgment, "the nonmoving party may not simply

rely on his pleadings but must present some evidence on every material issue for

which he will bear the burden of proof at trial").[4]  For brevity, the court does not

set forth all the FAC's allegations, and to follow only discusses relevant *evidence*

in the record as necessary to explain its rulings.

The FAC seeks "special, economic, consequential and general

damages," ECF No. 11 at PageID.83, as well as punitive damages and attorney's

fees and costs, alleging the following seven counts:

> (1) Discrimination based on race or ancestry (Samoan) in violation of Title VII of the Civil Right Act (42 U.S.C. § 2000e-2(a))—brought against DPS;
>
> (2) Title VII Retaliation (42 U.S.C. § 2000e-3(a))—brought against DPS;
>
> (3) Conspiracy (supplemental Hawaii law claim)—brought against all Defendants;
>
> (4) Violation of 42 U.S.C. § 1983—brought against all Defendants;

---

[4]  Under Federal Rule of Civil Procedure 56(e), as amended in 2010, if a party fails to properly address a movant's assertion of fact, the court may "consider the fact undisputed for purposes of the motion" and "grant summary judgment if the motion and supporting materials— including the facts considered undisputed—show that the movant is entitled to it."  Fed. R. Civ. P. 56(e)(2) & (3).

(5) Violation of 42 U.S.C. § 1985 (conspiracy to interfere with civil rights)—brought against all Defendants;

(6) Intentional Infliction of Emotional Distress (supplemental Hawaii law claim)—brought against all Defendants; and

(7) Negligent Infliction of Emotional Distress (supplemental Hawaii law claim)—brought against all Defendants.

ECF No. 11 at PageID.67–83.

## B.      Procedural Background

Defendants filed both Motions on March 6, 2026.  ECF Nos. 93, 94. Plaintiff filed corresponding Oppositions to the Motions on April 20, 2026, ECF Nos. 100, 101, and Defendants filed Replies on April 27, 2026, ECF Nos. 102, 103.

Defendants' Replies argued, among other matters, that Plaintiff's counsel had violated the District of Hawaii's Civil Local Rules by greatly exceeding the page limits for memoranda and concise statements of fact.  *See, e.g.*, ECF No. 102-3 at PageID.1781–1784.  In response to the court's inquiry regarding the exact word count of his filings (*see* ECF No. 104), Plaintiff's counsel forthrightly admitted that he had violated Local Rules 7.4 and 56.1.  *See* ECF No. 105 at PageID.1884 ("I was trying to be thorough and, in my efforts, I completely blew past the allowed word count and forgot to check due to my state of extreme fatigue and pain and having to go back to trial the next day.").  On May 4, 2026,

the court struck the portions of Plaintiff's Oppositions and Concise Statements that

exceeded the allowable limits.  *See* ECF No. 108.[5]  Later, upon request from the

court, the parties supplemented the record with documents relevant to an argument

by the DPS that Plaintiff had not exhausted his administrative remedies as required

under Title VII.  *See* ECF Nos. 113–115.  On May 27, 2026, the court held oral

argument on the Motions.  *See* ECF No. 116.

### III.  <u>STANDARD OF REVIEW</u>

Summary judgment is proper when there is no genuine issue of

material fact, and the moving party is entitled to judgment as a matter of law.  Fed.

R. Civ. P. 56(a).  "An issue is 'genuine' only if there is a sufficient evidentiary

---

[5]  Plaintiff's counsel had sought retroactively to exceed the allowable page limits, but the court denied that request after indicating it would allow Plaintiff's counsel to re-file within proper page or word limits if he paid the appropriate attorneys' fees incurred by Defendants for time spent responding to the noncompliant filings.  ECF No. 107.  As noted in the court's May 4, 2026 Entering Order, Plaintiff's counsel instead agreed to the court's striking of offending portions of the filings.  *See* ECF No. 108.  To be clear, although the court struck portions of Plaintiff's Oppositions and Concise Statements, the court has not granted any relief in favor of Defendants solely because of those strikes.  *See, e.g.*, *Heinemann v. Satterberg*, 731 F.3d 914, 917 (9th Cir. 2013) (explaining that, after 2010 amendments to Rule 56, a court may not grant summary judgment "by default even if there is a complete failure to respond to [a motion for summary judgment]" (quoting Fed. R. Civ. P. 56 Advisory Committee Notes (2010) (internal quotation marks omitted)).  Rather, a court may consider certain facts as undisputed for purposes of a motion, but it can grant summary judgment only after considering other properly supported evidence, along with facts deemed admitted "for want of a proper response."  *Id.*  That is, a court must consider—as this court has done—the properly supported summary judgment record and arguments from both sides, including whether Defendants have met their initial burden to demonstrate an absence of material fact.  *See* Fed. R. Civ. P. 56(c)(1); *see also, e.g.*, *Brennan v. Hawaiian Airlines, Inc.*, 2025 WL 2784482, at *8 (D. Haw. Sept. 29, 2025) ("Despite Plaintiff's failure to comply with the Rules, the Court independently reviewed the record to ensure that Defendants are entitled to summary judgment as a matter of law.") (citing *Heinemann*, 731 F.3d at 918) (other citation omitted).

basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law." *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"The moving party initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). "When the moving party has carried its burden . . . its opponent must do more than simply show that there is some metaphysical doubt as to the material facts"; instead, the opponent must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (citation and quotation marks omitted). "This burden is not a light one. The non-moving party must show more than the mere existence of a scintilla of evidence." *In re Oracle*, 627 F.3d at 387 (citation omitted); *see also Anderson*, 477 U.S. at 248 (stating that a party cannot "rest upon the mere allegations or denials of his pleading" in opposing summary judgment).

When considering a motion for summary judgment, the court views the facts in the light most favorable to the nonmovant, and draws all reasonable inferences in the nonmovant's favor. *See, e.g., Scott v. Harris*, 550 U.S. 372, 378

(2007).  "[T]he court does not make credibility determinations or weigh conflicting evidence." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

## IV.  <u>DISCUSSION</u>

Because the two Motions overlap in both their issues and arguments, the court considers them together and analyzes them on a count-by-count basis.

**A.   Count One—Discrimination in Violation of Title VII (Asserted Against the DPS)**

Count One alleges disparate treatment based on Plaintiff's Samoan ancestry against the DPS in violation of Title VII, 42 U.S.C. § 2000e(2)(a).  In seeking summary judgment on Count One, the DPS first argues that the claim is barred for lack of exhaustion of either administrative or contractual remedies.[6]  The DPS then argues that the claim fails because Plaintiff has not made a prima facie case of discrimination and that it had a legitimate, non-discriminatory reason for its actions with no corresponding showing by Plaintiff of pretext.  *See, e.g.*, *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1155–56 (9th Cir. 2010) (explaining the burden-shifting framework derived from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).  The court disagrees with both arguments, as explained to follow.

---

[6]  The administrative exhaustion argument was made by the DPS in the first Motion, but not by the individual Defendants in the second Motion, likely because Count One is not asserted against them in their individual capacities.  The individuals, however, did assert a lack of exhaustion of *contractual* remedies in the second Motion, apparently—although not clear—raising the argument as to non-Title VII claims.

### 1.   *Exhaustion of Administrative or Contractual Remedies*

First, after supplementation by the parties, the record contains a relevant administrative charge of discrimination that was presented to the Equal Employment Opportunity Commission ("EEOC") on December 7, 2021.  *See* ECF No. 115-2.  That charge (Charge No. 486-2021-00436) alleged in part:

> In August 2020, I reported safety concerns and disregard of Covid19 safety practices at the Sheriff Airport Section and perpetuated by the Sheriff Airport Section Administration and others to State Senators Nishihara, Dela Cruz, Mercado Kim and then US Rep Tulsi [Gabbard].  In September 2020 I was falsely accused, charged for workplace violence / creating a hostile work environment, and reassigned to the Kapolei Sheriff Section.  I was found innocent of all alleged violations in October 2020 and yet I was forced to remain on ROPA Status at Kapolei Sheriff Section per order of PSD Director Max Otani in July 2021.  In July 2021, I also received notice from PSD Director Max Otani that I would be permanently reassigned to the Kapolei Sheriff Section effective July 19, 2021.  I have been accused 6 separate occasions of this same charge of Hostile Work Environment / Workplace Violence as well as being reassigned . . . . [incomplete charge in record]

*Id.* at PageID.1927.  Based on this charge, the EEOC issued a right-to-sue letter on December 2, 2022.  *See* ECF No. 114-1 at PageID.1917.  This suit was then timely filed on March 2, 2023, which was 90 days after the EEOC issued that notice of right to sue.  *See* 42 U.S.C. § 2000e–5(f)(1) ("If a charge filed with the [EEOC] . . . is dismissed by the [EEOC], . . . the [EEOC or other appropriate entity] shall so

notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought. . . ."); *Payan v. Aramark Mgmt. Servs. Ltd. P'ship*, 495 F.3d 1119, 1121 (9th Cir. 2007) ("[T]his ninety-day period operates as a limitations period.").[7]  The December 7, 2021 administrative charge and December 2, 2022 right-to-sue notification are enough to reject the DPS's lack-of-exhaustion argument as to the FAC's Title VII counts.[8]

---

[7]  There are at least two right-to-sue notices in the record that may be relevant.  The DPS's Motion cited a right-to-sue notice issued to Plaintiff on December 3, 2020, stemming from a very similar but earlier charge of discrimination (Charge No. 486-2020-00520) presented to the EEOC on October 28, 2020, which also complained of events occurring in August and September of 2020.  *See* ECF No. 93-20 at PageID.768 (citing documents at ECF No. 93-16 at PageID.744–747).  Although unclear, the DPS had argued that Plaintiff had only exhausted claims based on his placement on ROPA on September 7, 2020, but not other prior events.  *See id.*  In any event, the DPS did not argue exhaustion of administrative remedies further in its Reply, and—after the court sought clarification, and the parties provided the December 7, 2021 charge and December 2, 2022 notice of right to sue—it is established that this action is based on the December 2, 2022 notice.  Defendants have not argued anything else regarding any possible effect of the prior October 28, 2020 administrative charge or the December 3, 2020 notice.  *See Margolin*, 146 S. Ct. at 1288.

[8]  Although also unclear, at the May 27, 2026 hearing, the DPS appeared to argue—in response to a question from the court—that the December 7, 2021 administrative charge leading to the December 2, 2022 notice of right to sue did not "exhaust" the September 7, 2020 ROPA, and only "exhausted" a June or July 2021 permanent reassignment to Kapolei (even though the DPS's Motion itself conceded that the ROPA had been exhausted).  The court received no briefing on this argument regarding the December 2, 2022 notice.  Regardless, the December 7, 2021 charge made a claim that included the ROPA among other events, and a right-to-sue letter was issued without substantive comment.

The DPS might have been thinking that the charge was problematic because it encompassed events that occurred more than 300 days before the administrative charge (300 days prior to the December 7, 2021 charge is February 10, 2021).  In a jurisdiction with a "worksharing agreement," such as Hawaii, a plaintiff has 300 days from the last alleged unlawful employment practice to file a charge of discrimination with the EEOC or the Hawaii Civil Rights Commission.  *See, e.g.*, *B.K.B. v. Maui Police Dept.*, 276 F.3d 1091, 1099 (9th Cir. 2002) ("Under Title VII, a plaintiff must exhaust her administrative remedies by filing a timely charge with the EEOC, or the appropriate state agency, thereby affording the agency an opportunity to

(continued . . . )

And second, the court rejects Defendants' argument (made in both Motions) that the case should be dismissed for lack of exhaustion of contractual remedies. It is undisputed that a union, on Plaintiff's behalf under a collective bargaining agreement ("CBA"), filed a grievance or grievances relating to the same or similar events at issue in the suit (e.g., the ROPA and subsequent adverse personnel actions). *See* ECF No. 100-16. Defendants argue that because those union proceedings are still pending, this suit must be dismissed.[9] *See* ECF No. 93-20 at PageID.769; ECF No. 94-20 at PageID.904. But there is no requirement to exhaust such union remedies before bringing Title VII claims. *See Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 59–60 (1974) (holding that an employee may

---

investigate the charge.") (citing 42 U.S.C. § 2000e-5(b)), *abrogated on other grounds by Fort Bend County, Texas v. Davis*, 587 U.S. 541 (2019).; *E.E.O.C. v. Global Horizons, Inc.*, 860 F. Supp. 2d 1172, 1193 (D. Haw. 2012) ("Title VII extends the 180-day period [in § 2000e-5(e)(1)] to 300-days if filed in a 'worksharing jurisdiction.'") (citations omitted). But an argument that the Title VII claim improperly encompasses actions outside a 300-day period is an argument that the claim (or part of the claim) is barred by a statute of limitations in Title VII. The DPS did not make that argument. The DPS's Motion does not mention Title VII's statute of limitations at all, and its Motion includes no argument or analysis of such an issue. Indeed, the DPS's Motion mentioned only the *prior* notice (the October 28, 2020 notice of right to sue) in making an exhaustion argument, which did not include mention of a statute of limitations. Notably, Title VII's charge-filing period "is not a jurisdictional prerequisite to filing a Title VII suit. Rather it is a requirement subject to waiver, estoppel, and equitable tolling 'when equity so requires.'" *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 121 (2002) (quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 398 (1982)).

[9] At the May 27, 2026, hearing, Defendants explained that the union grievance proceedings were put on hold, pending a ruling by this court on these Motions (at least as to claims against the individual Defendants). This posture, however, is inconsistent with Defendants' argument that this suit fails for lack of exhaustion of the union proceedings; Defendants would in essence be creating the very condition causing the dismissal.

"pursue fully both his remedy under the grievance-arbitration clause of a collective-bargaining agreement and his cause of action under Title VII."). If there is a decision in an arbitration, a Title VII claim is considered by a court de novo, but "[t]he arbitral decision may be admitted as evidence and accorded such weight as the court deems appropriate." *Id.* at 60.

Defendants incorrectly cite cases that require exhaustion of claims that assert violations of terms of a CBA, not violations of Title VII. *See, e.g.*, *Debeikes v. Hawaiian Airlines, Inc.*, 141 F. Supp. 3d 1075, 1091 (D. Haw. 2015) (stating a court "lacks subject matter jurisdiction to hear [a plaintiff's] *breach of CBA claim* where he did not first exhaust contractual remedies available under the CBA") (emphasis added), *aff'd*, 725 F. App'x 499 (9th Cir. 2018); *Poe v. Haw. Lab. Rels. Bd.*, 105 Haw. 97, 101, 94 P.3d 652, 656 (2004) ("We have held it 'well-settled that an employee must exhaust any grievance . . . procedures provided under a collective bargaining agreement before bringing a court action *pursuant to the agreement*.'") (citation omitted) (emphasis added); *Soone v. Kyo-Ya Co.*, 353 F. Supp. 2d 1107, 1115 (D. Haw. 2005) (similar); *Williams v. Aona*, 121 Haw. 1, 12, 210 P.3d 501, 512 (2009) (refusing to require exhaustion of CBA remedies where "it is clear that [the facts and issues raised] do not arise from the terms of the CBA"). This reasoning is because "Title VII rights . . . 'exist independent of the collective bargaining agreement.'" *Felt v. Atchison, Topeka & Santa Fe Ry. Co.*, 60

13

F.3d 1416, 1420 (9th Cir. 1995) (quoting *Hawaiian Airlines, Inc. v. Norris*, 512

U.S. 246, 260 (1994)).  Title VII claims are not rights "created or defined" by the

CBA.  *Id.* (internal quotation marks omitted).

What's more, as for a contractual exhaustion requirement for non-

Title VII claims (such as the state law claims for emotional distress in Counts Six

and Seven), in Hawaii "even if CBA remedies did apply, tort claims are excepted

from the general rule that employees must exhaust their remedies under the CBA

before seeking judicial relief."  *Williams*, 121 Haw. at 11, 210 P.3d at 511.  And to

the extent Defendants argue that lack of exhaustion of remedies under the CBA

precludes claims under 42 U.S.C. § 1983, it is well established that § 1983 does not

impose an exhaustion requirement.  *See, e.g.*, *Patsy v. Bd. of Regents of State of*

*Fla.,* 457 U.S. 496, 516 (1982) ("[E]xhaustion of state administrative remedies

should not be required as a prerequisite to bringing an action pursuant to § 1983.");

*Mahoney v. Hankin,* 593 F. Supp. 1171, 1174 (S.D.N.Y. 1984) ("[P]laintiff needed

to exhaust neither the state administrative remedies nor the remedies under the

collective bargaining agreement before the [§ 1983] case could be heard. . . .");

*DeLoreto v. Ment,* 944 F. Supp. 1023, 1030 (D. Conn. 1996) ("[T]here is no

requirement in . . . federal law that requires [p]laintiffs to exhaust their grievance

and arbitration procedures before filing a section 1983 suit."); *Lawson v. Univ. of*

*Haw.*, 2024 WL 3904721, at *10 (D. Haw. Aug. 22, 2024) ("Lawson was not

required to exhaust his remedies under the Faculty CBA before bringing the
Section 1983 claims that he alleges in the Amended Complaint.").

### 2. *Application of* McDonnell Douglas

On the merits, the DPS argues that Count One fails under the
*McDonnell Douglas* framework.  Under this framework, "plaintiffs must first
establish a prima facie case of employment discrimination."  *Hawn*, 615 F.3d at
1155 (citing *Noyes v. Kelly Servs.*, 488 F.3d 1163, 1168 (9th Cir. 2007)).  "If
plaintiffs establish a prima facie case, '[t]he burden of production, but not
persuasion, then shifts to the employer to articulate some legitimate,
nondiscriminatory reason for the challenged action.'"  *Id.* (quoting *Chuang v. Univ.
of Cal. Davis, Bd. of Trs.*, 225 F.3d 1115, 1123–24 (9th Cir. 2000)).  "If defendant
meets this burden, plaintiffs must then raise a triable issue of material fact as to
whether the defendant's proffered reasons for their terminations are mere pretext
for unlawful discrimination."  *Id.* (citations omitted).  "A plaintiff can show pretext
directly, by showing that discrimination more likely motivated the employer, or
indirectly, by showing the employer's explanation is unworthy of credence."
*Vasquez v. Cnty. of L.A.*, 349 F.3d 634, 641 (9th Cir. 2003).  And to establish a
prima facia case,

> plaintiffs "must offer evidence that 'give[s] rise to an
> inference of unlawful discrimination.'" *Godwin v. Hunt
> Wesson, Inc.*, 150 F.3d 1217, 1220 (9th Cir. 1998)

>(alteration in original), citing *Tex. Dep't of Cmty. Affairs
>v. Burdine*, 450 U.S. 248, 253, 101 S. Ct. 1089, 67
>L.Ed.2d 207 (1981).  Plaintiffs may establish a prima
>facie case based on circumstantial evidence by showing:
>(1) that they are members of a protected class; (2) that
>they were qualified for their positions and performing
>their jobs satisfactorily; (3) that they experienced adverse
>employment actions; and (4) that "similarly situated
>individuals outside [their] protected class were treated
>more favorably, or other circumstances surrounding the
>adverse employment action give rise to an inference of
>discrimination."

*Hawn*, 615 F.3d at 1156 (some citations omitted).

As for a prima facie case, the DPS does not challenge the first three prongs (protected class, qualified for a position, adverse action).  Rather, it questions the fourth prong, arguing that Plaintiff has no evidence that similarly situated individuals were treated more favorably.  *See* ECF No. 93-20 at PageID.772.  In response, Plaintiff presents some unspecific evidence that other deputy sheriffs were placed on ROPA but were not reassigned.  *See* ECF No. 100-2 at PageID.992 (Plaintiff attesting that "I am aware of similarly situated non-Samoan deputies who were treated more favorably under similar circumstances, including being allowed to remain in their positions while on ROPA and continuing to receive overtime and other benefits"); ECF No. 100-20 at PageID.1196–97 (Plaintiff testifying that "[w]hen they ROPA'd me out of the airport, costing me money and promotions, there were already three deputies on ROPA at the

airport. . . . I believe the Attorney Generals and the department let [them] retire instead of filing criminal charges").

But more importantly, the DPS has not fully addressed the fourth prong, which provides in full that a plaintiff may show "similarly situated individuals outside [plaintiff's] protected class were treated more favorably, *or other circumstances surrounding the adverse employment action give rise to an inference of discrimination*." *Hawn*, 615 F.3d at 1156 (emphasis added) (internal quotation marks omitted); *Lui v. DeJoy*, 129 F.4th 770, 778 (9th Cir. 2025) ("Many of our sister circuits have articulated the fourth element of the *McDonnell-Douglas* prima facie test as a catch-all requiring only that the adverse action 'occurred under circumstances giving rise to an inference of [] discrimination.' . . . [W]e adopt [this description] here.") (citations omitted).

Here, even if Plaintiff has insufficient evidence that similarly situated sheriffs were treated differently, he has enough evidence of "other circumstances surrounding his alleged adverse employment action to give rise to an inference of discrimination" to establish a prima facie case. *Vazquez*, 349 F.3d at 641. For example, Plaintiff cites testimony (both from a deposition in this case and from a related 2020 arbitration proceeding) from former co-sheriff Gordon Lee that Defendant Cummings (albeit in 2009) wanted Lee "to make felony charges against [Plaintiff] and he didn't care how I made it." ECF No. 100-17 at PageID.1085.

17

Lee testified "I think he was jealous of [Plaintiff] and exact words was . . . 'he's a "f***ing Samoan' and 'I don't like Samoans.'"  *Id.*  Lee testified that "[Cummings] wanted to brief me on how we were going to get [Plaintiff]" and "Cummings came [and] talked to me again about getting [Plaintiff].  I guess he had a pretty personal vendetta against [Plaintiff]."  *Id.*; *see also id.* at PageID.1087 (Lee explaining that he gave similar testimony in a February 25, 2020 arbitration).[10]  Plaintiff also testified that the individual Defendants "made up all these allegations" in August 2020 and that because of "those false allegations, it got me ROPA'd and sent to Kapolei."  ECF No. 100-20 at PageID.1189.  And, as discussed later when addressing pretext, it is undisputed that a DPS investigator found that the reason given for the ROPA and reassignment was not credible.  *See* ECF No. 100-12 at PageID.1037.

"Under the *McDonnell Douglas* framework, '[t]he requisite degree of proof necessary to establish a prima facie case for Title VII . . . on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence.'"  *Chuang*, 225 F.3d at 1124 (quoting *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994)); *see also Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981) ("The burden of establishing a prima facie case of disparate

---

[10]  In an unsworn declaration, Cummings denies Lee's assertions.  *See* ECF No. 93-3.

treatment is not onerous."). Plaintiff has met his burden to show a prima facie case of discrimination.

The DPS offers a legitimate nondiscriminatory reason for the ROPA—that Plaintiff threatened another employee in the workplace on August 27, 2020. But Plaintiff has provided ample evidence of pretext. That evidence, if true, demonstrates that the reason proffered by Defendants is "unworthy of credence." *Vasquez*, 349 F.3d at 641. Specifically, a DPS internal investigator found the reason given for the ROPA (the alleged threat) was "unsubstantiated." *See* ECF No. 100-12 at PageID.1037. And in opposition to the Motions, two witnesses stated in sworn declarations that Plaintiff did not threaten anyone and, instead, Defendants conspired to discriminate or retaliate against Plaintiff. *See* ECF No. 100-24 at PageID.1342–1344; ECF No. 100-25 at PageID.1349–1350; *see also* ECF No. 100-24 at PageID.1344 ("At no point did Stevenson ever threaten[] Ozaki or anyone else . . . . I was ordered to initiate a[n] Administrative SOC investigation against Stevenson—even though he DID NOT do anything wrong . . . ."); ECF No. 100-25 at PageID.1349 ("[Plaintiff's] statement 'come to the parking lot then' was not meant in [the] context of challenging Sgt. Ozaki to a fight, rather in context of adhering to what Sgt. Ozaki said to 'talk story later.'"). And, as discussed previously, former employee Gordon Lee testified that Defendant Cummings in 2009 told Lee to make up felony charges against Plaintiff because of his race. ECF

19

No. 100-17 at PageID.1085.  Plaintiff also testified directly that several similar incidents of reassignments based on complaints—later found to be unsubstantiated—occurred between 2015 and 2017.  ECF No. 100-20 at PageID.1185–1188.[11]

In short, viewing the evidence at summary judgment in the light most favorable to Plaintiff, there is a question of fact as to pretext.  *See Vasquez*, 349 F.3d at 641.  The Motion as to Count One is DENIED.

**B.      Count Two—Retaliation in Violation of Title VII (Asserted Against the DPS)**

The DPS next seeks summary judgment on Plaintiff's claim for retaliation in violation of Title VII, 42 U.S.C. § 2000e-3(a).  The only ground argued by the DPS is the same argument regarding pretext that it made as to Count One.  That is, it argues under *McDonnell Douglas* that it had a legitimate, non-discriminatory reason for the alleged adverse actions.  *See Lui*, 129 F.4th at 782 ("Title VII retaliation claims use the same burden-shifting *McDonnell Douglas* framework used for discrimination claims.").  It has not challenged any of the other requirements of a Title VII retaliation claim.

---

[11]  Even if such evidence would not be actionable as time-barred, *see Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002), the time-barred evidence can still be admissible as background evidence in support of timely claims and thus to show pretext.  *See id.* ("Nor does [Title VII] bar an employee from using the prior acts as background evidence in support of a timely claim."); *Lyons v. England*, 307 F.3d 1092, 1110–1111 (9th Cir. 2002).

Given the court's ruling that there is a genuine issue of material fact as to pretext for discrimination alleged in Count One, it necessarily follows that the court cannot grant summary judgment in favor of the DPS on Count Two. That is, there is a dispute of fact whether the report about Plaintiff's alleged threats of violence on August 27, 2020—which led to Plaintiff's September 7, 2020 ROPA and subsequent reassignment—was pretext for illegal retaliation. The DPS's Motion as to Count Two is DENIED.

## C.   Count Three—Conspiracy (Asserted Against All Defendants)

Defendants next argue that Count Three, a Hawaii common law claim for "conspiracy," fails based on the "intracorporate conspiracy doctrine." Under the doctrine, originally from an antitrust context,

> a single corporate entity cannot be liable for conspiracy because "[t]he officers of a single firm are not separate economic actors pursuing separate economic interests, so agreements among them do not suddenly bring together economic power that was previously pursuing divergent goals."

*Petricevic v. Shin*, 2021 WL 2700382, at *4 (D. Haw. June 30, 2021) (quoting *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 769 (1984)). As the Supreme Court explains:

> Under this principle—sometimes called the intracorporate-conspiracy doctrine—an agreement between or among agents of the same legal entity, when the agents act in their official capacities, is not an

unlawful conspiracy.  The rule is derived from the nature of the conspiracy prohibition.  Conspiracy requires an agreement—and in particular an agreement to do an unlawful act—between or among two or more separate persons.  When two agents of the same legal entity make an agreement in the course of their official duties, however, as a practical and legal matter their acts are attributed to their principal.  And it then follows that there has not been an agreement between two or more separate people.

*Ziglar v. Abbasi*, 582 U.S. 120, 153 (2017) (citations omitted).

Defendants rely on caselaw addressing the doctrine generally in relation to a conspiracy under 42 U.S.C. § 1985 that (although relevant to Count Five) they assume applies to a common law conspiracy claim.  *See Petricevic*, 2021 WL 2700382, at *4; *Hoefer v. Fluor Daniel, Inc.*, 92 F. Supp. 2d 1055, 1057 (C.D. Cal. 2000).  But here, the court must address the intracorporate-conspiracy doctrine under Hawaii law.  And the Hawaii Supreme Court has recognized that *Copperweld* can apply "on a case-by-case, factual basis" to a civil conspiracy claim, at least when addressing whether a corporation can conspire with a wholly owned subsidiary.  *See Robert's Hawaii School Bus, Inc. v. Laupahoehoe Transp. Co., Inc.*, 91 Haw. 224, 260, 982 P.2d 853, 889 (1999) ("Although we do not adopt, wholesale, the principles enunciated in *Copperweld*, because the instant civil conspiracy claim is not premised upon the Sherman Act, we recognize that the 'singular enterprise' principle can be applied on a case-by-case, factual basis."),

*superseded by statute on other grounds as recognized in Davis v. Four Seasons*

*Hotel Ltd.*, 122 Haw. 423, 429, 228 P.3d 303, 309 (2010)).  Given this reasoning in

*Robert's Hawaii*, the court addresses "on a case-by-case basis" whether summary

judgment on Count Three should be granted based on a "singular enterprise"

theory.[12]

Here, the evidence establishes that all the individual Defendants are

employees of the DPS.  *See, e.g.*, ECF Nos. 93-3, 93-4, 93-5, 93-6, 93-7, and 93-8.

It is also established as fact that, as asserted in the DPS's Concise Statement of

Facts (and unopposed by Plaintiff), "[n]one of the individual defendants' conduct

was outside the normal course and scope of their official duties."  ECF No. 93-1 at

PageID.656; *see* Fed. R. Civ. P. 56(e)(2) (providing that a court may consider a fact

not properly addressed by the nonmovant as "undisputed for purposes of [Rule

56]").  And "employees of a company are not liable for conspiracy so long as the

employee is acting within the scope of his employment."  *White v. Pac. Media*

*Grp., Inc.*, 322 F. Supp. 2d 1101, 1112 (D. Haw. 2004) (citations omitted); *see*

*also, e.g.*, *Harp v. King*, 835 A.2d 953, 974 (Conn. 2003) (precluding common law

conspiracy claim where employees were working within scope of employment);

---

[12]  Similarly, *Jass v. Cherryroad Techs. Inc.*, 572 F. Supp. 3d 906, 937 n.33 (D. Haw. 2021) addressed an argument that a Hawaii common law civil conspiracy claim was barred by the intracorporate conspiracy doctrine even though the parties had not cited cases from Hawaii courts.

*Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 703–704 (Tenn. 2002)

("[W]e hold that there can be no actionable claim of conspiracy where the

conspiratorial conduct alleged is essentially a single act by a single corporation

acting through its officers, directors, employees, and other agents, *each acting*

*within the scope of his or her employment*") (relying on cases applying state law

from Nebraska, Nevada, and West Virginia).  Because the DPS cannot have

conspired with itself, Defendants are entitled to summary judgment on Count

Three alleging common law conspiracy.[13]

**D.     Count Four—Violations of 42 U.S.C. § 1983 (Asserted Against all Defendants)**

Defendants next challenge Court Four, which asserts civil rights

violations under 42 U.S.C. § 1983.  Initially, the DPS did not argue that it is not a

"person" for purposes of § 1983.  *See Will v. Mich. Dep't of State Police*, 491 U.S.

58, 71 (1989) ("[N]either a state nor its officials acting in their official capacities

---

[13]  The DPS did not raise Eleventh Amendment immunity as to this state law claim for
damages.  But because the claim otherwise fails against the DPS (and the individual Defendants
in their official capacities), the court need not decide whether to raise Eleventh Amendment
immunity sua sponte as to the DPS.  *Compare, e.g.*, *In re Jackson*, 184 F.3d 1046, 1048 (9th Cir.
1999) ("Eleventh Amendment sovereign immunity limits the jurisdiction of the federal courts
and can be raised by a party at any time during judicial proceedings or by the court sua sponte."),
*superseded on other grounds by statute, as recognized in In re Berkovich*, 15 F.4th 997, 998 (9th
Cir. 2021)), *with In re Bliemeister*, 296 F.3d 858, 861 (9th Cir. 2002) ("Sovereign immunity is
quasi-jurisdictional in nature.  It may be forfeited where the state fails to assert it and therefore
may be viewed as an affirmative defense."); *see also McHugh v. Ill. Dep't of Transp.*, 55 F.4th
529, 532 (7th Cir. 2022) (analyzing Eleventh Amendment immunity and observing that
"[b]ecause 'jurisdictional' has more than one meaning, we can accurately say both that the
Eleventh Amendment is jurisdictional and that it is non-jurisdictional").

are 'persons' under § 1983."). But, despite the DPS's counsel's omission, the

Supreme Court has indicated that this "no person" defense is not waivable. *See*

*Arizonians for Off. Eng. v. Arizona*, 520 U.S. 43, 69 (1997); *see also, e.g.*,

*Alexander v. Bridgerland Tech. Coll.*, 2021 WL 718712, at *2 n.1 (D. Utah. Feb.

24, 2021) ("The *Will* 'no person' defense is not waivable.") (citing *Arizonans for*

*Off. Eng.*, 520 U.S. at 69); *Murray v. Greenville Cnty. Sheriff's Off.*, 2018 WL

5624162, at *2 (D.S.C. Sept. 19, 2018) (same), *report and recommendation*

*adopted*, 2018 WL 5617931 (D.S.C. Oct. 29, 2018). Raising the issue sua sponte,

the court gave notice to Plaintiff of the court's intention to grant summary

judgment on this ground in favor of the DPS (including the other Defendants in

their official capacities), and the court allowed Plaintiff to show cause otherwise.

*See* ECF No. 117. Plaintiff did not file a response.[14] Because it cannot be disputed

that the DPS, as an agency of the State of Hawaii, is not a "person" for purposes of

§ 1983, Count Four is DISMISSED as to the DPS and all Defendants in their

official capacities. *See, e.g.*, *Pauline v. Haw. Dep't of Pub. Safety*, 773 F. Supp. 2d

914, 922 (D. Haw. 2011) ("Courts in this district have ruled that DPS is not a

'person' under § 1983 and that a § 1983 claim against DPS fails as a matter of

law.").

---

[14] Instead, Plaintiff's counsel sent an email to the court stating the Plaintiff accepts the court's intention.

The court next considers the Motion's substantive arguments on
behalf of the individual Defendants in their personal capacities.[15]  As discussed at
the May 27, 2026 hearing, the court considers Plaintiff's § 1983 claim to be based
on alleged retaliation against a public employee in violation of the First
Amendment.  "[The court] review[s] a public employee's First Amendment
retaliation claim against their government employer under the two-step *Pickering*
framework."  *Thompson v. Cent. Valley Sch. Dist. No. 365*, 163 F.4th 654, 662 (9th
Cir. 2025) (citing *Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205*, 391 U.S.
563, 568 (1968)); *see also, e.g.*, *Connick v. Myers*, 461 U.S. 138, 142–146 (1983)
(explaining evolution of the doctrine).  "At Step One, the plaintiff must show that
(1) he spoke on a matter of public concern, (2) he suffered an adverse employment
action, and (3) his protected expression was a substantial or motivating factor for
the adverse action."  *Thompson*, 163 F.4th at 662 (citing *Riley's Am. Heritage
Farms v. Elsasser*, 32 F.4th 707, 721 (9th Cir. 2022)).  Then,

> [i]f the plaintiff satisfies Step One, he has established a
> prima facie claim for First Amendment retaliation.  The
> burden then shifts to the public employer at *Pickering*
> Step Two to demonstrate either: (1) that its legitimate
> administrative interests in promoting an efficient
> workplace and avoiding workplace disruption outweigh
> the plaintiff's First Amendment interests; or

---

[15]  "State officers are subject to § 1983 liability for damages in their personal capacities,
however, even when the conduct in question relates to their official duties."  *Arizonans for Off.
Eng.*, 520 U.S. at 69 n.24 (citing *Hafer v. Melo*, 502 U.S. 21, 25–31 (1991)).

(2) alternatively, the government would have taken the
same actions absent plaintiff's expressive conduct.

*Id.* (citing *Riley's Am. Heritage Farms*, 32 F.4th at 721).

The court first addresses the individual Defendants' argument that Court Four is barred at least in part by § 1983's statute of limitations.  Next, the court addresses the merits of a First Amendment retaliation claim.[16]

### 1.    *Section 1983's Statute of Limitations*

The individual Defendants initially argue that any allegations in Count Four based on actions occurring before March 2, 2021 (or two years prior to the filing of this suit on March 2, 2023) are barred by a two-year limitations period. *See, e.g.*, *Bird v. Dep't of Human Servs.*, 935 F.3d 738, 743 (9th Cir. 2019) ("Because 42 U.S.C. § 1983 does not contain its own statute of limitations, actions brought pursuant to 42 U.S.C. § 1983 are governed by the forum state's statute of limitations for personal injury actions.  In Hawaiʻi, the statute of limitations for personal injury actions is two years.") (quotation marks and citations omitted).

---

[16]   The parties have not specifically raised or briefed any of these elements of a First Amendment retaliation claim, at either Step One or Two of the *Pickering* analysis.  Rather, Defendants generally argue, under broader § 1983 principles, that Plaintiff's statements are not constitutionally protected and that there is no causation between Defendants' actions and Plaintiff's harm.  The court addresses those general arguments in light of the *Pickering* factors, but because no one briefed *Pickering*, the court declines to go further where the issues require specific analysis of nuances in a First Amendment context.  And as discussed to follow, the individual Defendants do not attempt to differentiate their conduct on a defendant-by-defendant basis (as opposed to their aggregate conduct) in seeking summary judgment on Count Four.

"Under federal law, the 'discovery rule' typically governs the accrual of § 1983 claims so that 'a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action.'" *Id.* (quoting *Knox v. Davis*, 260 F.3d 1009, 1013 (9th Cir. 2001)).

Nevertheless, Defendants recognized at the May 27, 2026 hearing that there is evidence of at least one adverse employment action that occurred *within* the two year period (i.e., after March 2, 2021)—a June 8, 2021 request from an Airports Division Deputy Director to the State Sheriff to permanently reassign Plaintiff away from the airports division.  *See* ECF No. 100-13 at PageID.1040.[17] That permanent reassignment request—which was apparently granted—was specifically based on the August 27, 2020 incident and "[Plaintiff's] abusive behavior . . . in dealing with airport staff which have complained to our administration in confidence."  *Id.*  Count Four is timely, at least in that regard. The September 7, 2020 ROPA, however, occurred outside the two-year period and is not itself actionable as an adverse employment action for purposes of a § 1983

---

[17]  Although the FAC quotes from a June 18, 2021 email Plaintiff allegedly sent to State officials regarding his numerous grievances and complaints, *see* ECF No. 11 at PageID.62–65, the record contains no *evidence* of that letter, *see Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003) (explaining that if a movant at summary judgment carries its initial burden, a plaintiff "must produce evidence in response" and "cannot defeat summary judgment with allegations in the complaint, or with unsupported conjecture or conclusory statements"). The court thus does not rely on such an email to establish any element of a First Amendment retaliation claim.

retaliation claim.  The court thus GRANTS the individual Defendants' Motion seeking summary judgment as to Count Four for adverse actions occurring outside the limitations period.  Count Four, however, is timely, at least as to a June 8, 2021 request to reassign Plaintiff permanently from his position at the airport.[18]

### 2.    *General Arguments Applied to the* Pickering *Framework*

The individual Defendants next argue—without any analysis—that Count Four fails because "statements allegedly made to state representatives or others raising concerns through internal department procedures," are not constitutionally protected.  ECF No. 93-20 at PageID.778; ECF No. 94-20 at PageID.908.  The court construes this argument as contending that Plaintiff did not make speech on a "matter of public concern."  *See Thompson*, 163 F.4th at 662. The Ninth Circuit, however, "ha[s] defined the scope of the public concern element broadly, and adopted a liberal construction of what an issue 'of public concern' is under the First Amendment."  *Desrochers v. City of San Bernardino*, 572 F.3d 703, 709–710 (9th Cir. 2009) (internal editorial marks and citations omitted).  "Speech involves a matter of public concern when it can fairly be considered to relate to

---

[18]  As previously noted when discussing Title VII, events outside the limitations period (preceding March 2, 2021) are still relevant to show context for an otherwise timely claim.  *See Morgan*, 536 U.S. at 113 (explaining that time-barred evidence can still be admissible as background evidence in support of timely claims); *Bird v. Dep't of Hum. Servs.*, 935 F.3d 738, 747 (9th Cir. 2019) (reiterating that, although *Morgan* was a Title VII case, its holdings regarding the continuing violations doctrine apply equally to other civil rights laws).

'any matter of political, social, or other concern to the community.'" *Eng v.
Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009) (quoting *Johnson v. Multnomah
County*, 48 F.3d 420, 422 (9th Cir. 1995) (internal quotation marks omitted).  "But
speech that deals with 'individual personnel disputes and grievances' and that
would be of 'no relevance to the public's evaluation of the performance of
governmental agencies' is generally not of 'public concern.'" *Id.* (quoting
*Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir. 2003)) (quotation marks
omitted).  "Whether an employee's speech addresses a matter of public concern
must be determined by the content, form, and context of a given statement, as
revealed by the whole record." *Johnson*, 48 F.3d at 422 (quoting *Connick*, 461
U.S. at 147–48) (internal quotation marks omitted).

Although not specified, Defendants appear to be referring to the
statements Plaintiff made to State of Hawaii legislators and others on August 27,
2020 regarding compliance by the DPS employees with COVID-19 mandates at
the Honolulu International Airport.  Such speech, especially construed in the light
most favorable to Plaintiff at this summary judgment stage, clearly relates to a
matter of "concern to the community" and would be relevant to "the performance
of governmental agencies." *Eng*, 552 F.3d at 1070.  *See Mayfield v. Mo. House of
Representatives*, 122 F.4th 1046, 1054 (8th Cir. 2024) (holding that complaints

about compliance with COVID-19 safety mandates are matters of public concern

for purposes of a First Amendment retaliation claim).

Defendants also argue that (1) there is no "causal connection"

between Plaintiff's "letters to state senators about COVID-19 safety" and any

adverse action, ECF No. 103-3 at PageID.1842, and (2) the DPS would have taken

the same actions regardless of the speech because they were based on the August

27, 2020 incident in which Plaintiff threatened co-workers, ECF No. 102-3 at

PageID.1789.  The court construes these arguments as contending that the speech

was not a "substantial or motivating factor for the adverse action" at Step One of

the *Pickering* analysis, and that "the government would have taken the same

actions absent plaintiff's expressive conduct" at Step Two.  *See Thompson*, 163

F.4th at 662 (explaining the two-step *Pickering* framework).

The June 8, 2021 letter requesting permanent reassignment of Plaintiff

was based specifically on the August 27, 2020 incident (which in turn was based

on allegedly false or malicious complaints by individual Defendants) as well as

"[Plaintiff's] type of abusive behavior" "in dealing with airport staff which have

complained to our administration . . . ."  ECF No. 100-13 at PageID.1040.  The

letter was written *after* the DPS had concluded that the August 27, 2020 incident

was unsubstantiated.  And, as discussed when analyzing the Title VII claim, there

is ample evidence in the summary judgment record to question whether the reason

31

given for the reassignment—the August 27, 2020 incident—was pretextual.  Under

the *Pickering* framework, there are questions of fact both as to causation and

whether Defendants would have taken adverse actions even without Plaintiff's

expressive conduct.  *See, e.g.*, *Lakeside-Scott v. Multnomah County*, 556 F.3d 797,

804 (9th Cir. 2009) ("[A]s a general matter the nature of § 1983 liability is such

that 'the requisite causal connection can be established not only by some kind of

direct personal participation in the [adverse action], but also by setting in motion a

series of acts by others which the actor knows or reasonably should know would

cause others to inflict the constitutional injury.'") (quoting *Gilbrook v. City of

Westminster*, 177 F.3d 839, 854 (9th Cir. 1999)).

        As noted earlier, the parties have not analyzed or briefed the *Pickering*

framework in the individual Defendants' Motion or Plaintiff's Opposition.  Nor did

the individual Defendants argue, much less analyze on an individual-by-individual

basis, that there is insufficient evidence of any individual's participation in

retaliating under either step of the *Pickering* analysis.  The court declines to do any

more of their work for them.  *See Margolin*, 146 S. Ct. at 1288.  As the Motions are

presented, there are genuine issues of material fact such that the court DENIES the

individual Defendants' Motion in seeking summary judgment on Count Four's

First Amendment § 1983 retaliation claim.

**E.      Count Five—42 U.S.C. § 1985, Conspiracy to Interfere with Civil Rights (Asserted Against All Defendants)**

Title 42 U.S.C. § 1985 provides for several different types of conspiracy.  Although not specified in the FAC, the court construes Plaintiff's claim for a § 1985 "conspiracy to interfere with civil rights" to be brought under § 1985(3) ("Depriving Persons of Rights or Privileges").[19]

As mentioned earlier when addressing Count Three, Defendants invoke—in seeking summary judgment as to Count Five—the "intra-corporate conspiracy doctrine" originating from an antitrust context in *Copperweld*.  *See,*

---

[19]  Section 1985(3) provides:

> If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

*e.g.*, *Petricevic*, 2021 WL 2700382, at \*4 ("[A] single corporate entity cannot be liable for conspiracy because '[t]he officers of a single firm are not separate economic actors pursuing separate economic interests, so agreements among them do not suddenly bring together economic power that was previously pursuing divergent goals.'") (quoting *Copperweld*, 467 U.S. at 769).  And as discussed when analyzing Count Three, it is undisputed that "[n]one of the individual defendants' conduct was outside the normal course and scope of their official duties."  ECF No. 93-1 at PageID.656.

"The Circuits are divided over whether extension of the intracorporate conspiracy doctrine to § 1985 is appropriate."  *Hoefer*, 92 F. Supp. 2d at 1057. Most Circuits have applied the doctrine to conspiracy claims under § 1985, although at least two Circuits have not.  *See, e.g.*, *Bowie v. Maddox*, 642 F.3d 1122, 1130–1131 (D.C. Cir. 2011) (collecting cases); *Kelly v. Cnty. of Orange*, 2024 WL 4719923, at \*5 (C.D. Cal. Sept. 19, 2024) (same).  But neither the Ninth Circuit nor the Supreme Court has decided whether the doctrine applies to a civil rights conspiracy under § 1985(3).  *See Armstrong v. Reynolds*, 22 F.4th 1058, 1085 n.8 (9th Cir. 2022) ("[T]his court has expressly reserved the question 'whether individual members of a single government entity can form a "conspiracy" within the meaning of section 1985.'") (quoting *Portman v. County of Santa Clara*, 995 F.2d 898, 910 (9th Cir. 1993)); *Ziglar*, 582 U.S. at 153 (acknowledging that "this

Court has not given its approval to this doctrine in the specific context of

§ 1985(3)," although clarifying after recognizing the circuit split that "[n]othing in

this opinion should be interpreted as either approving or disapproving the

intracorporate-conspiracy doctrine's application in the context of an alleged

§ 1985(3) violation," and providing qualified immunity to individual officers given

the legal uncertainly).

Nevertheless, recognizing that the Ninth Circuit has not reached the

issue, this court will follow the majority position and apply the intra-corporate

conspiracy doctrine to a § 1985 conspiracy.  The court agrees with the reasoning in

other decisions that a public entity cannot conspire with itself, especially where—

as has been established as fact in this case—public employees are working within

the scope of their employment.  And the court agrees that the doctrine's

"application should not depend on the perceived importance of the issue or public

policy involved" and that "the doctrine would not apply if the actionable conduct is

outside the scope of employment."  *Hoefer*, 92 F. Supp. 2d at 1059 (agreeing with

the Second, Fourth, Sixth, Seventh, and Eighth Circuits on those points); *see also,*

*e.g.*, *Rabkin v. Dean*, 856 F. Supp. 543, 551–52 (N.D. Cal. 1994) (finding

persuasive "the rationale supporting application of the intracorporate conspiracy

doctrine to bar a § 1985 claim where the conspiratorial conduct challenged is

essentially a single act by a single governmental body acting exclusively through

its own officers, each acting within the scope of his or her official capacity'"); *Diaz v. Carlsmith Ball, LLP*, 2007 WL 9710579, at *8 (D. Haw. Apr. 23, 2007) (following the "weight of authority" and applying the doctrine to bar a § 1985(3) claim, reasoning that "[r]egardless of the policy interests that recommend as broad an application of § 1985 as possible, the definition of 'conspiracy' is what it is: an entity cannot conspire with itself"), *aff'd sub nom.*, *Diaz v. Connolly*, 332 F. App'x 385 (9th Cir. 2009).

Accordingly, the Motions are GRANTED as to Count Five as to both the DPS and the individual Defendants in their personal capacities.[20]

## F. Count Six—Intentional Infliction of Emotional Distress ("IIED") (Asserted Against All Defendants)

Next, Defendants move for summary judgment on Count Six, which alleges IIED against all Defendants. The DPS argues—and the court agrees—that

---

[20] The DPS did not argue that as an agency of the State of Hawaii, the DPS has Eleventh Amendment immunity for claims under § 1985. *See, e.g.*, *Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1196 (10th Cir. 1998) (holding that Congress did not abrogate the states' Eleventh Amendment immunity when it enacted 42 U.S.C. § 1985); *Cerrato v. San Francisco Cmty. Coll. Dist.*, 26 F.3d 968, 975 (9th Cir. 1994) ("The [defendant] is not liable because the Eleventh Amendment bars [plaintiff's] section 1985 and 1986 claims."). Nor did the individual Defendants argue that they have qualified immunity for § 1985 claims against them in their personal capacities, given that the law is not clearly established. *See, e.g.*, *Ziglar*, 582 U.S. at 154–55 (determining that individual officers are entitled to qualified immunity for § 1985 claim where it is not clearly established that intra-corporate conspiracy doctrine applies); *Pasene v. Correa*, 2022 WL 4058765, at *14 (D. Haw. Sept. 2, 2022) (applying *Ziglar* to grant qualified immunity against § 1985 claims against defendants in the same Hawaii governmental department). But because the claim otherwise fails, the court need not decide whether to raise these grounds sua sponte.

this Hawaii common law claim is barred by Eleventh Amendment immunity. *See,
e.g.*, *Aholelei v. Dep't of Pub. Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007) ("The
Eleventh Amendment bars suits for money damages in federal court against a state,
its agencies, and state officials acting in their official capacities."); *see also
Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101–03 (1984). This
principle applies equally to claims against the individual Defendants in their
official capacities. *See, e.g.*, *McNally v. Univ. of Haw.*, 780 F. Supp. 2d 1037, 1055
(D. Haw. 2011) ("A suit against state officials in their official capacities is the same
as a suit against the state itself and therefore is subject to the Eleventh
Amendment.") (citing *Kentucky v. Graham*, 473 U.S. 159, 166–67 (1985)).
Accordingly, the IIED claim is DISMISSED against the DPS and the individual
Defendants in their official capacities.

The individual Defendants in their *personal* capacities argue that there
is no evidence that they acted in an "outrageous" manner for purposes of IIED.
*See, e.g.*, *Hac v. Univ. of Haw.*, 102 Haw. 92, 106–07, 73 P.3d 46, 60–61 (2003)
("[T]he elements of the tort of intentional infliction of emotional distress are 1) that
the act allegedly causing the harm was intentional or reckless, 2) that the act was
outrageous, and 3) that the act caused 4) extreme emotional distress to another.");
*Enoka v. AIG Haw. Ins. Co.*, 109 Haw. 537, 559, 128 P.3d 850, 872 (2006) ("The
term 'outrageous' has been construed to mean without just cause or excuse and

beyond all bounds of decency.") (citations and some internal quotation marks omitted).

Here, however, claims against the individuals in their personal capacities remain for violating 42 U.S.C. § 1983.  Among other allegations, there is evidence that they acted in concert to file unfounded complaints against Plaintiff to retaliate against him.  Under similar circumstances where statutory discrimination claims remain and when construing the evidence in the light most favorable to plaintiffs, courts in this district have allowed claims for IIED to remain.  *See, e.g.,* *Lopes v. Kapiolani Med. Ctr. for Women & Child.*, 410 F. Supp. 2d 939, 957 (D. Haw. 2005) ("This Court has also found that outrageous behavior may be found where a plaintiff claims that her supervisor used her work injury as a pretext for wrongfully discharging her in retaliation and in response to a personal dislike for her.") (citation omitted); *Bane v. Sailors' Union of Pac.*, 2008 WL 450036, at *11 (D. Haw. Feb. 19, 2008) (denying summary judgment on IIED claim after the court allowed a Title VII claim to remain, and where defendant allegedly manipulated a job referral process to prevent plaintiff from receiving work); *Hughes v. Mayoral,* 721 F. Supp. 2d 947, 966 (D. Haw. June 24, 2010) (denying summary judgment on IIED claim after plaintiff had established elements of a Title VII discrimination claim, where defendant had allegedly uttered racial and sexual remarks).

Hawaii courts have explained that, for purposes of IIED, "[t]here is no clear definition of the prohibited outrageous conduct, and the correct inquiry is simply whether an average member of the community would exclaim, 'Outrageous!'" *Goran Pleho, LLC v. Lacy*, 144 Haw. 224, 238, 439 P.3d 176, 190 (2019) (internal editorial remarks and citation omitted). "[T]he question whether the actions of the alleged tortfeasor are unreasonable or outrageous is for the court in the first instance, although where reasonable people may differ on that question it should be left to the jury." *Young v. Allstate Ins. Co.*, 119 Haw. 403, 429, 198 P.3d 666, 692 (2008) (citation and internal quotation marks omitted). Given those standards, the court concludes that—construing the evidence in Plaintiff's favor— reasonable people may differ on whether the individual Defendants' actions were outrageous.

The court also rejects the individual Defendants' alternate argument, discussed for the first time in their Reply, that Count Six is barred by Hawaii's workers compensation exclusivity principles under HRS § 386-5. The individuals are not Plaintiff's "employer" for purposes of worker's compensation. And even if a co-employee could also have such immunity, a co-employee's liability for "wilful and wanton conduct" is not barred. *See, e.g.*, *You v. Longs Drugs Stores California, LLC*, 937 F. Supp. 2d 1237, 1260 (D. Haw. 2013) (reasoning that under HRS 386-8(k) a supervisor or co-employee is not relieved of liability) (citing

*Iddings v. Mee–Lee*, 82 Haw. 1, 21, 919 P.2d 263, 283 (1996)); *Hughes v. Mayoral*, 721 F. Supp. 2d 947, 964 (D. Haw. 2010) (same).  Given a question of fact regarding "outrageousness," there remains a question of fact whether the individual Defendants' acts were "wilful and wanton."

For those reasons, the individual Defendants' Motion is DENIED as to Count Six.

**G.     Count Seven—Negligent Infliction of Emotional Distress ("NIED") (Alleged Against All Defendants)**

Lastly, Defendants move to dismiss Count Seven, which alleges NIED against all Defendants.  As with Count Six, the DPS asserts that a claim against it for NIED is barred by Eleventh Amendment immunity, and the court agrees.  As explained earlier, claims against the DPS (and the individual Defendants in their official capacities) are claims against the State of Hawaii.  Count Seven is DISMISSED as against the DPS and official-capacity Defendants based on Eleventh Amendment immunity.  *See Aholelei*, 488 F.3d at 1147; *Pennhurst State Sch. & Hosp.*, 465 U.S. at 101–03; *Kentucky*, 473 U.S. at 166–67.

As for NIED claims against the individual Defendants in their personal capacities, Defendants argue—and the court also agrees—that those NIED claims fail for lack of evidence of the "physical injury" element as required in Hawaii law.  *See, e.g.*, *Spriestersbach v. Hawaii*, 723 F. Supp. 3d 955, 972 (D.

Haw. 2024) ("[U]nder Hawai'i law, as part of the plaintiff's requirement [for NIED] to prove actual injury, [plaintiff] must prove 'that someone was physically injured by the defendant's conduct, be it the plaintiff himself or herself or someone else.'") (quoting *Doe Parents No. 1 v. Haw. Dep't of Educ.*, 100 Haw. 34, 69–70, 58 P.3d 545, 580–81 (2002)). There is also no evidence of "circumstances guaranteeing the genuineness and seriousness of the mental distress alleged." *Goran Pleho LLC*, 144 Haw. at 239, 439 P.3d at 191 (setting forth an exception for the physical injury requirement) (citing *Doe Parents*, 100 Haw. at 68–88, 58 P.3d at 579–99). The Motions are GRANTED as to Count Seven.[21]

## V. **CONCLUSION**

The Motions for Summary Judgment are GRANTED in part and DENIED in part. To summarize:

• Counts One (Title VII discrimination) and Two (Title VII retaliation) remain as to the Department of Public Safety.

• Counts Four (violations of 42 U.S.C. § 1983) and Six (intentional infliction of emotional distress) remain as to the individual Defendants, but they are dismissed as to those Defendants in their official capacities and as to the Department of Public Safety.

---

[21] Because the court otherwise grants the Motions as to Count Seven, the court need not reach Defendants' alternate argument that Count Seven is barred by workers compensation exclusivity principles under Hawaii law.

• Counts Three (common law conspiracy), Five (42 U.S.C. § 1985(3) conspiracy), and Seven (negligent infliction of emotional distress) are dismissed as to all Defendants.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, June 29, 2026.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge